Robert H. AULL, on behalf of himself
and all others similarly situated,
Plaintiff,

v.

CAVALCADE PENSION PLAN; Cavalcade Pension Plan Committee; Kevin Lewis; Carlene Stewart; Alton Smith; Donald Dodson; Furr's/Bishop's, Inc.; Furr's/Bishop's Cafeterias, L.P.; Cavalcade & Co., Inc.; Cafeteria Operators, L.P.; Michael J. Levenson; Kmart Corporation; and Kmart Corporation Employes' Retirement Plan, Defendants.

Civil Action No. 96–D–628.

United States District Court,
D. Colorado.

Dec. 31, 1997.

Robert F. Hill, Hill & Robbins, P.C., Denver, CO, for Plaintiffs.

Michael D. Nosler, Rothgerber, Appel, Powers & Johnson, LLP, Denver, CO, for Defendants.

## MEMORANDUM OPINION AND ORDER GRANTING THE KMART DEFENDANTS' RENEWED MOTION FOR SUMMARY JUDGMENT

DANIEL, District Judge.

### I.  INTRODUCTION

This matter is before the Court on a Renewed Motion for Summary Judgment filed

on July 18, 1997, by Defendant Kmart Corporation and Defendant Kmart Corporation Employees' Retirement Plan (the "Kmart Defendants" or "Kmart"), seeking summary judgment in their favor on the Fifth and Sixth Claims for Relief in Plaintiff's Complaint. The Court has reviewed the extensive briefing and the evidentiary exhibits submitted by the respective parties as well as the relevant statutory and case law, and has heard lengthy oral argument of counsel on the motion. For the following reasons, the Court hereby grants the Kmart Defendants' Renewed Motion for Summary Judgment as to Plaintiff's Fifth and Sixth Claims for Relief and hereby orders that the Fifth and Sixth claims for Relief be dismissed with prejudice, and that the Kmart Defendants be dismissed from this lawsuit. The Court further orders that no sanctions shall be assessed against Plaintiff or Plaintiff's counsel as a result of the filing and maintenance of the Fifth and Sixth Claims for Relief against the Kmart Defendants.

## II. *ANALYSIS*

### A. *Fifth Claim For Relief*

I will first address the Fifth Claim for Relief, comprised of paragraphs 147 through 152 of the Complaint. The Fifth Claim alleges, in essence, that the Kmart Defendants were at relevant times fiduciaries with respect to the Plaintiff and similarly situated class members and that the Kmart Defendants violated their duties under the Employee Retirement Income Security Program ("ERISA") Sections 404 and 406, 29 U.S.C. §§ 1104(a) and 1106. Specifically, Plaintiff alleges breaches of fiduciary duty arising from (i) the failure to transfer sufficient assets from the Kmart Corporation Employees' Retirement Plan (the "Kmart Plan") to the newly established Cavalcade Pension Plan (the "Cavalcade Plan") after Kmart sold its stock in Furr's Cafeterias ("Furr's") and Bishop Buffets ("Bishop") in 1986, and (ii) the provision of money or items of value to the subsequent owner of Furr's and Bishop, rather than to the Cavalcade Plan, in November of 1993, in exchange for an agreement to end corporate efforts to obtain the transfer of additional monies from the Kmart Plan to the Cavalcade Plan. Plaintiff further relies upon ERISA Section 409, 29 U.S.C. § 1109, as authorization for the recovery of alleged losses to the Cavalcade Plan resulting from the alleged breaches of fiduciary duty, and brings his claim pursuant to ERISA Section 502(a)(2), 29 U.S.C. § 1132(a)(2).

#### 1. *Alleged Failure to Transfer Sufficient Assets to Cavalcade Plan*

Initially, I note that ERISA expressly sets forth a statute of limitations applicable to claims against fiduciaries. ERISA § 413, 29 U.S.C. § 1113. That section provides, in relevant part, as follows:

(a) No action may be commenced under this title with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part, or with respect to a violation of this part, after the earlier of—

(1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission, the latest date on which the fiduciary could have cured the breach or violation, or

(2) three years after the earliest date (A) on which the plaintiff had actual knowledge of the breach or violation...

except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation.

*Id.*

I find that the six-year statute of repose requires dismissal of the portion of Plaintiff's Fifth Claim for Relief that pertains to the alleged failure to transfer assets from the Kmart Plan to the Cavalcade Plan after the sale of stock by the Kmart Defendants. Pursuant to 29 U.S.C. § 1113(a)(1)(A), the statute of repose begins to run from the date of the last action that would constitute a breach or violation. I find that the last action constituting part of the alleged breach or violation in this case occurred on January 15, 1988, when the amount of $8,297,160.02 was transferred from the Kmart Plan to the Cavalcade Plan. I note that the Kmart Defendants entered into a stock purchase agreement on November 4, 1986, and a sup-

plemental agreement pertaining to pension benefits on May 11, 1987, pursuant to which the Cavalcade Plan was to be established and the Kmart Defendants were to be relieved of any further responsibilities or obligations in conjunction with Cavalcade Plan participants or beneficiaries. However, construing the facts in the light most favorable to Plaintiff as I must for this summary judgment motion, I decline to find that either of those earlier dates triggered commencement of the six-year statute of repose. Instead, I find that the actual transfer of the money to fund the new plan, i.e., the sum of $8,297,160.02 that was transferred from the Kmart Plan to the Cavalcade Plan on July 15, 1988, was the last action constituting the breach. That was the final action of the Kmart Defendants as plan administrators and the basis for the claim herein that the Kmart Defendants did not transfer sufficient assets.

Plaintiff argues that commencement of the six-year statute of repose should be deferred until the dates that small subsequent cash payments were transferred from the Kmart Plan to the Cavalcade Plan, or later requests by the subsequent owners of Furrs/Bishop for the transfer of more money to the Cavalcade Plan and corresponding refusals by Kmart to make any further payments. I find Plaintiff's argument for further deferral of commencement of the six-year statute of repose to be unpersuasive. It is apparent from the evidence submitted by the parties that the smaller subsequent cash payments made by Kmart on January 10 and March 7, 1989 were for specific additional liabilities and had no relationship to the basis for Plaintiff's claims against the Kmart Defendants. The Court further finds that those subsequent unrelated payments were not "last actions constituting a breach or violation" of any fiduciary duty owed by the Kmart Defendants to the Plaintiff or similarly situated class members. The Court similarly rejects the notion that subsequent demands for more money and subsequent refusals by the Kmart Defendants to make any further payments would constitute "last actions" for purposes of further deferring commencement of the six-year statute of repose. The Court finds no genuine issue of material fact exists regarding the date on which the last action constituting a breach occurred, and the

Court therefore finds this issue susceptible to summary judgment based upon the applicable statutory section and relevant case law.

In addition to the express provisions of 29 U.S.C. § 1113, the Court's conclusion is also supported by the case of *International Union of Electronic, Electric, Salaried, Machine and Furniture Workers, AFL—CIO v. Murata Erie North America, Inc.,* 980 F.2d 889, 899–900 (3rd Cir.1992). There, the court held that the six-year statute of repose contained in ERISA Section 413, 29 U.S.C. § 1113, began to run from the date when the plan sponsor amended the plan, which was the alleged violation at issue, and not when the plan administrator subsequently recouped the excess funds at the termination of the plan, which is what the new amendment had allowed the administrator to do. Similarly, in *DeVito v. Pension Plan of Local 819 I.B.T. Pension Fund,* No. 90 Civ. 5299(MJL), 1997 WL 26292, at *6–7 (S.D.N.Y. January 22, 1997), the court held that the six-year statute of repose began to run when the plan at issue was amended to include the challenged provision.

Also supporting the Court's holding is the analysis and opinion in *Larson v. Northrop Corp.,* 21 F.3d 1164, 1168–72 (D.C.Cir.1994), where the court held that the six-year statute of repose for breach of fiduciary duty began to run when the plan sponsor/fiduciary, having terminated the plan, acquired an annuity which was allegedly insufficient to fund the plan, even though the participant suffered no actual harm until he reached age 55, the earliest age his pension benefit could be due. Once the sponsor of the terminated plan purchased the annuity to fund the plan's future pension liabilities, the sponsor had no further financial responsibility to the plan participants. *Id.; see also Gluck v. Unisys Corp.,* 960 F.2d 1168, 1177–79 (3rd Cir.1992); *In Re Unisys Corporation Retiree Medical Benefits ERISA Litigation,* 957 F.Supp. 628, 638–40 (E.D.Pa.1997).

Plaintiff's claims against the Kmart Defendants were not filed until March 15, 1996, eight years and two months after the asset transfer of $8,297,160.02 made on January 15, 1988. Consequently, Plaintiff's claims against Kmart are untimely by two years and

two months. The Court need not address Plaintiff's argument that the pendency of an earlier uncertified class action for a period of five months and seventeen days tolled commencement of the six-year statute of repose by that amount of time. That is so because even if Plaintiff's argument were accepted, five months and seventeen days of tolling would fall far short of saving Plaintiff's claims against the Kmart Defendants.

I also address Plaintiff's contention that the failure to transfer a fully-funded plan was an omission on the part of Kmart. Pursuant to 29 U.S.C. § 1113(a)(1)(B), the six-year statute of repose begins to run on the latest date on which the fiduciary could have cured the breach. Plaintiff argues that Kmart could still, today, cure the breach, and therefore the statute of limitations has not run. First, I reject Plaintiff's argument because it assumes a potentially unending liability on the part of entities such as Kmart that are alleged to have never cured a breach. This would essentially eliminate the purpose for having a statute of repose for claims of a breach of fiduciary duty. Second, the omission portion of the statute refers to the latest date when the "fiduciary" can cure the breach. Thus, Kmart must still be a fiduciary today in order to be liable under this section. I find that Kmart is not a fiduciary since it has no control or authority over the plan or decisions made regarding the plan and has not had such control since the transfer of the plan in 1988. *See* 29 U.S.C. § 1002(21)(A) and section II(A)(2), *infra.*

Finally, even if Kmart could be liable as a fiduciary today for any omission(s), and assuming that there has been no cure of the alleged breach such that the six-year statute of repose has not run, this claim is still barred. 29 U.S.C. § 1113(a)(2) bars a claim accruing more than three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation. I find that the three-year statute of limitations began to run on October 28, 1992, when Plaintiff received a memo sent to all pension plan participants which should have alerted him to the alleged breach. This case was not filed until March 15, 1996, more than three years thereafter.

Accordingly, the Court having found no genuine issue of material fact, finds that the Kmart Defendants are entitled to summary judgment in their favor as a matter of law on the portion of Plaintiff's Fifth Claim for Relief that pertains to the transfer of assets to the Cavalcade Plan.

### 2. *Alleged Improper Activity in 1993*

The second portion of Plaintiff's Fifth Claim for Relief against the Kmart Defendants, contained in ¶ 150(b) of the Complaint, also is appropriate for summary judgment. This claim, which relates solely to alleged actions by the Kmart Defendants in connection with transactions that occurred in 1993, depends upon the existence of a fiduciary relationship between the Kmart Defendants and Plaintiff and similarly situated class members at the time of the complained of actions in 1993. The Court finds the absence of any genuine issues of material fact as to this claim and further finds that, on the basis of the undisputed material facts and plainly applicable law, the Kmart Defendants were not fiduciaries with respect to, and had no fiduciary duties to, Plaintiff or similarly situated class members in 1993.

The term "fiduciary" is defined in 29 U.S.C. § 1002(21)(A) as one with respect to a plan who "(i) exercises any discretionary authority · or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) . . . renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) . . . has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1109(b) expressly states that a fiduciary shall not be liable for a breach of fiduciary duty "if such breach was committed before he became a fiduciary or after he ceased to be a fiduciary."

The United States Supreme Court observed in *Mertens v. Hewitt Associates,* 508 U.S. 248, 262, 113 S.Ct. 2063, 2071, 124 L.Ed.2d 161 (1993), that ERISA "defines 'fiduciary' not in terms of formal trusteeship, but in *functional* terms of control and authority over the plan." Likewise, in *IT Corp.*

*v. General American Life Insurance Co.*, 107 F.3d 1415 (9th Cir.1997), *petition for cert. filed,* 66 U.S.L.W. 3204 (U.S. Sept. 22, 1997) (No. 97–520), the court noted that: " '[P]ersons who have no power to make any decisions as to plan policy, interpretation, practice or procedures' are not fiduciaries." *Id.* at 1420 (citation omitted).

For Plaintiff's argument to be valid, this Court would have to find that the Kmart Defendants are still fiduciaries today, even though the stock sale occurred over eleven years ago in 1986 and the Kmart Defendants transferred its assets totaling over $8 million to the Cavalcade Plan almost ten years ago in January of 1988. Such a finding is unwarranted. Instead, I find that the Kmart Defendants were not fiduciaries with respect to Plaintiff or other Cavalcade Plan participants or beneficiaries after the creation and funding of the Cavalcade Plan, effective as of January 15, 1988. There is no evidence that the Kmart Defendants have or had any authority or control over the management of the Cavalcade Plan since the transfer of the assets on January 15, 1988. Further, there is no evidence that the Kmart Defendants have or had control over the disposition of the Cavalcade Plan's assets since, at the latest, January 15, 1988. In addition, there is no evidence that the Kmart Defendants have rendered any advice regarding any investments by the Cavalcade Plan, nor have they had any responsibility in connection with the administration of the Cavalcade Plan since that date. Finally, since January 15, 1988, there is no evidence that the Kmart Defendants have or had power to make any decisions regarding the Cavalcade Plan.

In support of his proposition that the Kmart Defendants remained in a fiduciary status with him and similarly situated Cavalcade Plan participants and beneficiaries at the time of the complained of events in 1993, Plaintiff argues that, because he alleges the Kmart Defendants did not transfer sufficient assets to the Cavalcade Plan, they are still in essence "holding" monies properly belonging to the Cavalcade Plan, and consequently they are still fiduciaries with respect to him and similarly situated plan participants and beneficiaries. This argument is similar to the omission argument discussed in Section II(A)(1), *supra.* As with the omission argument, I reject this argument since it could result in never-ending liability of entities who, like the Kmart Defendants, at one time were involved in plan administration. At a minimum, acceptance of this argument would mean that merely by making an allegation of failure to transfer sufficient monies, any plaintiff could always maintain indefinitely any fiduciary-based claim against a past owner of a corporation or a party having past control over a pension plan, and liability might never end. That would be an illogical result and one plainly at odds with express provisions of ERISA itself and the case law I have cited above.[1]

Plaintiff further argues in support of the second portion of his Fifth Claim that, even if the Kmart Defendants were no longer fiduciaries with respect to Cavalcade Plan participants or beneficiaries in 1993, the Kmart Defendants nevertheless can be sued as non-fiduciary parties in interest. That argument by Plaintiff is equally unsupported. In *Mertens,* the United States Supreme Court in dicta considered whether ERISA Section 502(a)(3) creates a cause of action against non-fiduciaries for knowing participation in a fiduciary's breach of duty. *Id.,* 508 U.S. at 251, 113 S.Ct. at 2067. The Court did not believe that it was an oversight that no ERISA provision explicitly requires non-fiduciaries to avoid participation in a fiduciary's breach of fiduciary duty. *See also Central Bank of Denver v. First Interstate Bank of Denver,* 511 U.S. 164, 114 S.Ct. 1439, 128 L.Ed.2d 119 (1994). Other courts have interpreted Mertens as meaning that a non-fiduciary may not be held liable for knowingly participating in a fiduciary breach. *See*

---

1. I also note as additional authority for my conclusions on this issue that several courts have found specific categories of parties not to be fiduciaries. Although not directly on point, these other cases support my holding here. Specifically, in *Pappas v. Buck Consultants, Inc.,* 923 F.2d 531, 535–36 (7th Cir.1991), the court found that actuaries do not become fiduciaries for purposes of obligations under ERISA when they give advice to the plan trustees and invite reliance on that advice. In *Lockheed Corp. v. Spink,* 517 U.S. 882, ——, 116 S.Ct. 1783, 1789, 135 L.Ed.2d 153 (1996), the Supreme Court held that when employers adopt, modify or terminate welfare benefit or pension plans, they do not act as fiduciaries within the meaning of ERISA.

*Reich v. Rowe,* 20 F.3d 25, 29–31 (1st Cir. 1994); *Reich v. Compton,* 57 F.3d 270, 284 (3rd Cir.1995); *Buckley Dement, Inc. v. Travelers Plan Administrators of Illinois, Inc.,* 39 F.3d 784, 789–90 (7th Cir.1994); *Reich v. Continental Casualty Co.,* 33 F.3d 754, 757 (7th Cir.1994), *cert. denied,* 513 U.S. 1152, 115 S.Ct. 1104, 130 L.Ed.2d 1071 (1995); *Gerzog v. London Fog Corp.,* 907 F.Supp. 590, 602 (E.D.N.Y.1995); and *Farris v. Century Planners, Ltd.,* 858 F.Supp. 150, 152–53 (D.Kan.1994).

Accordingly, the Court finds that there is no genuine issue of material fact on these issues. Summary judgment in favor of the Kmart Defendants is appropriate as to the second portion of Plaintiff's Fifth Claim for Relief, pertaining to the transactions and occurrences in 1993.

### B. *Sixth Claim For Relief*

■ I will now turn to Plaintiff's Sixth Claim for Relief. The Sixth Claim, brought against the Kmart Defendants, is contained in paragraphs 153–156 of the Complaint. Plaintiff alleges a violation of ERISA Section 208, 29 U.S.C. § 1058, as a result of the alleged failure by the Kmart Defendants to transfer the requisite amount of assets to the Cavalcade Plan. The claim is brought as an enforcement action pursuant to ERISA Section 502(a)(3)(B), 29 U.S.C. Section 1132(a)(3)(B).

Specifically, the Sixth Claim asserts that the Kmart Defendants "were required to transfer assets to the Cavalcade Plan in an amount at least sufficient to provide payment to each former participant in the Kmart Plan who became a participant in the Cavalcade Plan of a benefit immediately after the transfer equal to or greater than the benefits he would have been entitled to receive immediately before the transfer if the Kmart Plan had at that time been terminated." Complaint, ¶ 154. Plaintiff further alleges that Kmart failed and refused to transfer the assets allegedly required by Section 208 of ERISA, and that he is entitled to equitable relief on behalf of himself and similarly situated plan participants or beneficiaries. He requests an order compelling the Kmart Defendants to transfer to the Cavalcade Plan the assets allegedly required under ERISA Section 208.

The Kmart Defendants urge application of the six-year statute of repose, or alternatively the three-year statute of limitations, contained in ERISA Section 413, 29 U.S.C. § 1113, discussed at length in the prior sections of this Opinion. Although there is no Tenth Circuit authority directly on point, I believe that if the Tenth Circuit were faced with this issue, it would find that 29 U.S.C. § 1113 does not apply to claims asserting a violation of Section 208 of ERISA.

The Tenth Circuit, interpreting this statute, has held that ERISA Section 413 is only applicable to actions arising out of violations of the fiduciary responsibility portion of the Act found at 29 U.S.C. §§ 1101–12. *Wright v. Southwestern Bell Telephone Co.,* 925 F.2d 1288, 1290 (10th Cir.1991); *see also Held v. Manufacturers Hanover Leasing Corp.,* 912 F.2d 1197, 1200 (10th Cir.1990) ("Section 413, 29 U.S.C. § 1113, is applicable to violations of Part 4 of the Act ("Fiduciary Responsibility")); *Trustees of the Wyoming Laborers Health and Welfare Plan v. Morgen & Oswood Construction Co., Inc.,* 850 F.2d 613, 618 n. 8 (10th Cir.1988) ([t]he statute of limitations contained in 29 U.S.C. § 1113 applies only to actions brought to redress a fiduciary's breach of its obligations to enforce the provisions of ERISA."). Since ERISA Section 208, 29 U.S .C. § 1058, is found in the Participation and Vesting section of ERISA, not the Fiduciary Responsibility section of ERISA, it is not technically a fiduciary claim. Accordingly, I believe that applicable Tenth Circuit precedent would preclude application of the statute of limitations found in Section 1113 to this claim.

Further, the Tenth Circuit holds that Section 1113 of ERISA does not apply to private enforcement actions brought under ERISA Section 502, 29 U.S.C. § 1132, which Plaintiff relies on to enforce his claim under Section 208. *Wright,* 925 F.2d at 1290–91; *Held,* 912 F.2d at 1200. Specifically, the Tenth Circuit stated:

> We hold the district court erred when it concluded that section 1113 was applicable to an action brought under section 1132. Section 1113 is, in fact, only applicable to violations of the portion of the Act addressing fiduciary responsibilities, 29

U.S.C. §§ 1101–12. *See Wyoming Laborers Health & Welfare Plan v. Morgen & Oswood Constr. Co.,* 850 F.2d 613, 618 n. 8 (10th Cir.1988). Wright's claim does not involve fiduciary responsibilities regarding financial solvency or accountability as contemplated by section 1113. The focus of his complaint is on SWB's *administration* of the plan's benefits, specifically, the denial of his long-term disability benefits.'

* * * * *

Section 1132 does not contain a statute of limitations. A recent decision of this circuit, *Held v. Manufacturers Hanover Leasing Corp.,* 912 F.2d 1197 (10th Cir. 1990), addresses the appropriate limitations period for actions brought under this provision. In a private civil action brought pursuant to section 1132, Held asserted his former employer had violated section 1140, which proscribes interference with protected rights. *Id.* at 1198. We noted in *Held* that because Section 1132 does not contain a statute of limitations, we must first determine whether an analogous state statute or a statute of limitations from another portion of ERISA, such as section 1113, should apply. (citations omitted)

*Wright,* 925 F.2d at 1290–91. Accordingly, I find and so hold that the statute of limitations found in ERISA Section 1113 does not apply to Plaintiff's sixth claim. Accordingly, this Court must look to the most analogous state statute of limitations.

■ In determining which limitations period of the state is applicable, the Tenth Circuit in *Wright* stated as follows:

To determine the applicable statute of limitations in the present case, we first must characterize Wright's claim. Although Wright's amended complaint claims his action is based on sections 1132, 1140 and 1141, he does not ask for the declaratory and injunctive relief available under section 1132(a)(3). A review of the record reveals that Wright has never asked for declaratory or injunctive relief. In his prayer for relief, he seeks recovery of short- and long-term disability benefits that he claims were wrongfully denied. Such recovery is authorized under section 1132(a)(1)(B). Based on *Held,* we conclude Oklahoma's five-year statute of limitations

on written contracts [citation omitted], applies to this claim.

*Id.* at 1291. Similarly, Judge Finesilver in *Trustees of the Carpenters and Millwrights Health Benefit Trust Fund v. Lillard & Clark Construction Co., Inc.,* 780 F.Supp. 738, 741–42 (D.Colo.1990) held that the ERISA claim at issue there was analogous to a breach of contract action and that the state contract statute of limitations should apply.

I think the foregoing analysis is correct. Courts routinely analogize cases where the plaintiff is seeking ERISA benefits that he claims were wrongly denied to breach of contract actions for which the court must look to the state statute of limitations. *See Held,* 912 F.2d at 1206–07; *Morgen & Oswood,* 850 F.2d at 620 (action by trustee to recover delinquent contributions; court stated that "almost every court that has addressed a claim for delinquent contributions under ERISA has characterized that claim as a contract claim for purposes of determining an analogous statute of limitations.")

In Colorado there are two different statutes of limitation that could apply, the three year statute of limitations of Colo.Rev.Stat. § 13–80–101(1)(a) for contract claims and the six year statute of limitations of Colo.Rev. Stat. § 13–80–103.5(1)(a) which applies to "all actions to recover a liquidated debt or an unliquidated, determinable amount of money due to the person bringing the action, all actions for the enforcement of rights set forth in an instrument securing the payment of or evidencing any debt, and all actions of replevin to recover the possession of personal property encumbered under any instrument securing any debt."

Judge Finesilver in *Lillard & Clark* found that 13–80–103.5(1)(a) applied rather than the general contract limitations period found in 13–80–101. He reasoned:

[T]he Colorado courts have held that an action to recover money damages pursuant to a contract is governed by § 13–80–103.5, rather than the three year statute of limitations of § 13–80–101. (citations omitted). Plaintiffs here seek to recover an amount of money which was provided for in, and calculable from, the collective bargaining agreement signed by the parties. Fur-

thermore, a statute of limitations such as the six year period found at § 13–80–103.5 which specifically addresses a particular class of cases controls over a more general statute of limitations such as § 13–80–101. (citations omitted).

*Id.* at 741. I adopt his reasoning and find that the six year statute of limitations of Colo.Rev.Stat. § 13–80–103.5 applies to this action. As in Lillard & Clark, Plaintiff seeks to recover an amount which is provided for, and calculable from, the pension plan.

■ The next issue I must determine, however, is when the six-year limitations period accrues under state law. Judge Finesilver did not reach that issue in *Lillard & Clark* and it was not briefed by the parties. Colo.Rev.Stat. § 13–80–108 governs accrual of the limitations period in Colorado. I conclude that the most analogous portion of that statute to the six year statute of limitations is subsection (4), which generally tracks the language of § 13–80–103.5 and provides as follows:

> A cause of action for debt, obligation, money owed, or performance shall be considered to accrue on the date such debt, obligation, money owed, or performance becomes due.

Colo.Rev.Stat. § 13–80–108(4).

Applying the foregoing to the case at hand, I find and so hold that the applicable date "the debt, obligation, money owed or performance bec[ame] due" was January 15, 1988, when over $8 million in plan assets was transferred by the Kmart Defendants to the Cavalcade Plan. Since Plaintiff asserts this amount was not sufficient, the "debt, obligation, money owed, or performance" for the additional amount became due at that time. Thus, Plaintiff's Sixth Claim for Relief against the Kmart Defendants should have been filed no later than January 15, 1994. His lawsuit was actually filed on March 15, 1996. Consequently, Plaintiff's lawsuit was untimely by two years and two months.

For the foregoing reasons, the Court finds there is no genuine issue of material fact as to Plaintiff's Sixth Claim for Relief, that the material facts are undisputed, and that the Kmart Defendants are entitled to summary judgment as a matter of law. Accordingly, summary judgment is hereby granted in favor of the Kmart Defendants on Plaintiff's Sixth Claim for Relief.

### III. *CONCLUSION*

For the reasons stated above, pursuant to Fed.R.Civ.P. 56, the Kmart Defendants are entitled to summary judgment as to the claims asserted against them. Plaintiff's Fifth and Sixth Claims for Relief are hereby dismissed with prejudice as against the Kmart Defendants, and the Kmart Defendants are hereby dismissed from this lawsuit. It is further ordered that no sanctions shall be awarded against Plaintiff or Plaintiff's counsel in connection with the filing of the Fifth and Sixth Claims for Relief against Kmart.